1  SAMUEL KORNHAUSER, Esq., California Bar No. 083528
2  LAW OFFICES OF SAMUEL KORNHAUSER
   155 Jackson Street, Suite 1807
3  San Francisco, California 94111
   Telephone:    (415) 981-6281
4  Facsimile:    (415) 981-7616

5  BRIAN DAVID, Esq., Illinois ARDC No. 0582468 (*pro hac vice to be filed*)
   LAW OFFICES OF BRIAN DAVID
6  33 North LaSalle Street, Suite 3200
   Chicago, Illinois 60610
7  Telephone:    (847) 778-7528
   Facsimile:    (312) 346-8469

8  Attorneys for all Plaintiffs, individually
9  and on behalf of all those similarly situated

10

11                    **UNITED STATES DISTRICT COURT**

12      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

13

14

15  YADEL MARTI, EDGARDO BAEZ,          )  **Case No.**
    HELDER VELAZQUEZ, JORGE JIMENEZ,    )
16  JORGE MINYETY, EDWIN MAYSONET       )  **CLASS ACTION**
    and JOSE DIAZ, Individually and on Behalf of )
17  All Those Similarly Situated,       )
                                        )  **COMPLAINT FOR VIOLATIONS**
18                        Plaintiffs,   )  **OF FEDERAL AND STATE WAGE**
                                        )  **AND HOUR LAWS; STATE**
19              v.                      )  **UNFAIR COMPETITION LAWS;**
                                        )  **FEDERAL ANTI TRUST LAWS**
20  OFFICE OF THE COMMISSIONER OF       )
    BASEBALL, an unincorporated association )
21  doing business as MAJOR LEAGUE      )  **JURY TRIAL DEMANDED**
    BASEBALL; ALLAN HUBER "BUD" SELIG;  )
22  KANSAS CITY ROYALS BASEBALL CORP.;  )
    MIAMI MARLINS, L.P.; SAN FRANCISCO  )
23  BASEBALL ASSOCIATES LLC; BOSTON     )
    RED SOX BASEBALL CLUB L.P.; ANGELS  )
24  BASEBALL LP; CHICAGO WHITE SOX      )
    LTD.; ST. LOUIS CARDINALS, LLC;     )
25  COLORADO ROCKIES BASEBALL CLUB,     )
    LTD.; BASEBALL CLUB OF SEATTLE, LLP; )
26  THE CINCINNATI REDS, LLC; HOUSTON   )
    BASEBALL PARTNERS LLC; ATHLETICS    )
27  INVESTMENT GROUP, LLC; ROGERS       )
    BLUE JAYS BASEBALL PARTNERSHIP;     )
28  CLEVELAND INDIANS BASEBALL CO.,     )
    L.P.; CLEVELAND INDIANS BASEBALL    )

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

1  CO., INC.; PADRES L.P.; SAN DIEGO )
   PADRES BASEBALL CLUB, L.P.; )
2  MINNESOTA TWINS, LLC; WASHINGTON )
   NATIONALS BASEBALL CLUB, LLC; )
3  DETROIT TIGERS, INC.; LOS ANGELES )
   DODGERS, LLC; LOS ANGELES )
4  DODGERS HOLDING CO.; STERLING )
   METS L.P.; ATLANTA NATIONAL )
5  LEAGUE BASEBALL CLUB, INC.; AZPB )
   L.P.; BALTIMORE ORIOLES, INC.; )
6  BALTIMORE ORIOLES, L.P.; THE )
   PHILLIES L.P.; PITTSBURGH BASEBALL, )
7  INC.; PITTSBURGH BASEBALL P'SHIP; )
   NEW YORK YANKEES P'SHIP; TAMPA )
8  BAY RAYS BASEBALL LTD.; RANGERS )
   BASEBALL EXPRESS, LLC; RANGERS )
9  BASEBALL, LLC; CHICAGO BASEBALL )
   HOLDINGS, LLC; MILWAUKEE BREWERS )
10 BASEBALL CLUB, INC.; MILWAUKEE )
    BREWERS BASEBALL CLUB, L.P. )
11                              )
            Defendants.         )
12                              )

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

# TABLE OF CONTENTS

**I.      NATURE AND BACKGROUND OF SUIT** ........................................ 1

**II.     PARTIES** ................................................................................ 3

    **1.      Plaintiffs** ................................................................... 3

    **2.      Defendants** ................................................................ 6

**III.    CLASS ACTION ALLEGATIONS** ......................................... 13

**IV.     FLSA COLLECTIVE ACTION ALLEGATIONS** ...................... 17

**V.      JURISDICTION, VENUE, AND COMMERCE** ......................... 18

**VI.     FACTUAL ALLEGATIONS** ................................................. 19

    **I.      The Business of MLB** ................................................. 19

    **II.     Minor Leaguers' Uniform, Adhesive Contracts** ................. 20

    **III.    The Illegal Minor League Salaries** ................................ 25

    **IV.     The Long Hours Worked By Minor Leaguers** ..................... 29

**VII.    FEDERAL WAGE AND HOUR VIOLATIONS** ......................... 30

**VIII.   STATE WAGE AND HOUR VIOLATIONS** ............................ 33

**IX.     PRAYER FOR RELIEF** ...................................................... 52

**X.      DEMAND FOR JURY TRIAL** ............................................. 55

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

This class action is brought by Plaintiffs, minor league baseball players ("minor leaguers"), on behalf of themselves and the classes of minor leaguers they represent, against the defendants, the cartel of 30 major league baseball clubs and the Commissioner of Major League Baseball (collectively "MLB"), for violations of the Fair Labor Standards Act ("FLSA"), various state wage and labor laws and state unfair competition laws.

Plaintiffs allege as follows:

## I.     NATURE AND BACKGROUND OF SUIT

1.      The Defendants [1] are either members of or govern the cartel known as Major League Baseball ("MLB").

2.      MLB openly colludes on the working conditions for the development of its chief commodity: young baseball players. MLB routinely colludes to violate federal and state wage and hour laws and violate state unfair competition laws.

3.      In order to monopolize players and depress their salaries, the MLB cartel inserted a provision (known as the reserve clause) into players' contracts that allows teams to retain the contractual rights to players and restricts their ability to negotiate with other teams for their baseball services and the compensation they receive, which reserve clause preserves MLB's minor league system of artificially low salaries and nonexistent contractual mobility.

4.      Unlike major leaguers, players in the minor leagues ("minor leaguers") have no union or collective bargaining agreement, even though they comprise the overwhelming majority of baseball players employed by the Defendants. The Major League Baseball Players' Association ("MLBPA") does not represent the interests of minor leaguers.

5.      Efforts to unionize minor leaguers have been unsuccessful because minor leaguers fear retaliation by the Defendants. Minor leaguers are afraid to challenge the MLB-imposed wage system, for fear it would jeopardize their careers if they challenged the system.

6.      Minor leaguers are powerless to combat the collusive power of the MLB cartel. MLB continues to actively and openly collude on many aspects of minor leaguers' working

---

[1] The term "Defendants" applies to all defendants named in this Complaint.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

conditions, including, but not limited to, wages, contract terms, drug testing, and discipline. Major leaguers' salaries have increased by more than 2,000 percent since 1976 while minor leaguers' salaries have, on average, increased only 75 percent since that time. Inflation has risen by more than 400 percent over that same time period.

7.      The federal Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 et seq. was enacted to protect workers from the types of wage and labor abuses experienced by minor leaguers.

8.      The FLSA contains a savings clause that allows states to enact more protective wage and hour laws. 29 U.S.C. § 218(a). Consequently, actions may be brought simultaneously under both state and federal law. As permitted by the FLSA, many states, including Arizona, Florida, California, Oregon, Maryland and Pennsylvania, have also passed wage and hour laws to further these protections.

9.      Through their collective exercise of power, MLB has suppressed minor leaguers' wages in violation of the FLSA and state laws. Most minor leaguers earn between around $3,000 and $7,500 for the entire year, despite routinely working between 50 and 70 hours per week during the roughly five-month championship season. They receive no overtime pay, and instead, routinely receive less than minimum wage during the championship season.

10.      The Defendants have conspired to pay no wages at all for significant periods of minor leaguers' work. The Defendants do not pay minor leaguers their salaries during spring training, even though the Defendants require minor leaguers to often work over fifty hours per week during spring training. Similarly, the Defendants do not pay salaries during other training periods such as instructional leagues and winter training. [2]

11.      According to a recent MLB memo, the U.S. Department of Labor ("DOL") has stated that wage and hour violations "are endemic to [the] industry." [3]

---

[2] *See* Exhibit A attached hereto and incorporated herein, Major League Rules ("MLR") Attachment 3, UPC ¶ VII, B; ¶ VI, B.

[3] *See* Memorandum from Robert D. Manfred Jr. to All Presidents and Club Counsel, Sept. 12, 2013, *available* at http://www.fairwarning.org/wp-content/uploads/2013/10/Sept.-12memo.pdf.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

12.     The Defendants have been on notice since at least 1995 [4] that they are not exempt from federal minimum wage and overtime requirements. Yet, Defendants continue to willfully violate federal and state laws.

13.     This suit seeks to recoup the damages sustained by minor leaguers as a result of MLB's illegal wage and labor practices. It seeks to recover damages through a nationwide FLSA collective action. It also seeks to recover class action damages under the state laws of California, as well as Florida, Arizona [5], Pennsylvania, Maryland and Oregon. [6]

14.     Moreover, this suit seeks to enjoin MLB from subjecting future minor leaguers to Defendants' illegal wage and labor practices.

## II.     PARTIES

### 1.     Plaintiffs

15.     Plaintiff and class representative, Yadel Marti, is a former minor leaguer who was in the Oakland Athletics' organization from 2010 through 2012. Mr. Marti is a covered employee under the FLSA and under the California and Arizona state wage and hour laws. Mr. Marti worked in California and Arizona. He is a representative plaintiff on behalf of the Minor League Collective and a member of and proposed class representative for the California Class (and subclasses) and the Arizona Class. He was signed as a free agent by the Oakland Athletics in 2010.  He received a signing bonus of $12,000.  He attended Oakland's spring training in Arizona from about March 1 to April 5 during which time he received no salary despite working about 60 hours per week.  He stayed in Arizona for extended spring training receiving no salary for the balance of the year.  In 2011, he attended spring training in Arizona from March 1 to April 5 following which his contract was first assigned to Stockton (California), then to Midland (Texas), and later to Sacramento (California). In that year, Marti earned a total

---

[4] *See Bridewell v. The Cincinnati Reds*, 68 F.3d 136, 139 (6th Cir. 1995), *cert. denied*, 516 U.S. 1172 (1996); *Bridewell v. The Cincinnati Reds*, 155 F.3d 828, 829 (6th Cir. 1998).

[5] All members of the cartel maintain spring training sites in Florida and Arizona and many minor league teams operate within these two states.

[6] Minor league work occurs in California, Florida, Arizona, Pennsylvania, Oregon and Maryland.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

salary of $8000 despite working an average in excess of 50 hours per week all year. In 2012, Marti attended Oakland spring training in Arizona from March 1 to April 5 working about 60 hours a week for no salary. Then, he was released.

16.     Plaintiff and class representative Edgardo Baez is a former minor leaguer who was in the Montreal Expos (which became the Washington Nationals) organization from 2003 through 2012. Mr. Baez is a covered employee under the FLSA and under the Pennsylvania and Maryland state wage and hour laws. Mr. Baez worked in Pennsylvania and Maryland. He is a member and class representative on behalf of the Minor League Collective and the Pennsylvania Class and the Maryland Class. He was signed by the Montreal Expos (later became the Washington Nationals) in 2003 in the 4th round.  He remained in the organization until 2012.  He attended spring training and instructional ball each year and received no salary. His yearly salary from 2010 to 2012 ranged from $4500 to $7500.  In 2011, his contract was assigned to Harrisburg (Pennsylvania) and in 2012 to Bowie (Maryland).  He worked 50-60 hours per week on average during the course of the year.

17.     Plaintiff and class representative Helder Velazquez is a former minor leaguer who was in the Colorado Rockies' organization from 2006 through 2011. Mr. Velazquez is a covered employee under the FLSA and under the Arizona state wage and hour laws. Mr. Velazquez worked in Arizona. He is a member and class representative on behalf of the Minor League Collective and the Arizona Class. He was drafted and signed by the Colorado Rockies in 2006.  He attended spring training in Tucson, Arizona in 2006, 2007, 2008, 2009, 2010 and 2011.  In 2010 and 2011, his contract was assigned to Asheville, North Carolina of the South Atlantic League.  In 2010, he was paid a salary of about $6000 and in 2011, about $7000 while working well in excess of 50 hours per week.

18.     Plaintiff and class representative Jorge Jimenez is a former minor leaguer who was in the Boston Red Sox's and Cincinnati Reds' organizations from 2006 through 2013. Mr. Jimenez is a covered employee under the FLSA and under the California and Florida state wage and hour laws. Mr. Jimenez worked in California and Florida. He is a member and class representative on behalf of the Minor League Collective, the California Class and the Florida

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

1   Class. He was drafted and signed by the Boston Red Sox following the 2006 draft. He attended

2   spring training in Ft. Myers, Florida from 2006 through 2013. In 2011, the Cincinnati Reds'

3   organization assigned his contract to Bakersfield, California. That year, he was paid a salary of

4   approximately $10,000 while working in excess of 50 hours per week.

5       19.     Plaintiff and class representative Jorge Minyety is a former minor leaguer who

6   was in the San Diego Padres' organization from 2009 through 2011. Mr. Minyety is a covered

7   employee under the FLSA and under the Arizona and Oregon state wage and hour laws. Mr.

8   Minyety worked in Arizona and Oregon. He is a member and class representative on behalf of

9   the Minor League Collective, the Arizona Class and the Oregon Class. Mr. Minyety was signed

10  by the San Diego Padres in 2008. He attended spring training in 2009, 2010, and 2011 with the

11  Padres in Peoria, Arizona during which time he was not getting paid a salary while working

12  approximately 60 hours per week. He remained in Arizona the entire 2009 season where he

13  played rookie ball. In 2010, the Padres assigned his contract to Eugene, Oregon to start the

14  season and later, to their affiliate in San Antonio, Texas. In 2011, his contract was assigned

15  again to the affiliate in Eugene, Oregon. Each year (2009, 2010, and 2011), Minyety earned a

16  salary of $5000 while working on average 50 hours per week.

17      20.     Plaintiff and class representative Edwin Maysonet is a former minor leaguer who

18  was in the Houston Astros', the Milwaukee Brewers' and the Chicago Cubs' organizations

19  from 2008 through 2013. Mr. Maysonet is a covered employee under the FLSA and under the

20  Florida state wage and hour laws. Mr. Maysonet worked in Florida. He is a member and class

21  representative on behalf of the Minor League Collective and the Florida Class. Mr. Maysonet

22  was originally signed by the Houston Astros in 2003. In 2008, 2009, and 2010, he spent spring

23  training in Kissimmee, Florida. In December 2010, he was released and signed with the

24  Milwaukee Brewers. He was released and eventually signed with the Chicago Cubs

25  organization, who assigned his contract to Iowa where he spent the 2013 season.

26      21.     Plaintiff and class representative Jose Diaz is a former minor leaguer who was in

27  the New York Yankees' organization from 2013 to January 2014. Mr. Diaz is a covered

28  employee under the FLSA and the Florida state wage and hour laws. Mr. Diaz worked in

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

Florida. He is a member and class representative on behalf of the Minor League Collective and the Florida Class. Mr. Diaz signed with the New York Yankees in 2013 and spent that season in Tampa, Florida playing in the Gulf Coast League.  In October, he attended Yankees' instructional ball in Tampa.  He was released in January 2014.  He was paid a 2013 salary of $5000 working in excess of 50 hours per week.

### 2.     Defendants

22.     **The Office of the Commissioner of Baseball, d/b/a MLB.** The Office of the Commissioner of Baseball, doing business as MLB, is an unincorporated association comprised of the thirty Major League baseball clubs ("the Franchises"). [7] MLB has unified operation and common control over the Franchises. All do business as MLB.

23.     Under the broad meaning of "employ" used by the FLSA and the applicable state laws, MLB employed (and/or continues to employ) Plaintiffs, all similarly situated employees, and all employees of the proposed classes. As described more thoroughly below, the Defendants' cartel has developed a unified constitution and unified rules to closely control many fundamental aspects of the minor leaguers' employment, including, *inter alia*, hiring, contracts, wages, periods of wage payment and nonpayment, other working conditions, and control over the minor leaguers before, during, and after the championship season.

24.     **Allan Huber "Bud" Selig.** Since 1998, Allan Huber "Bud" Selig has served as the Commissioner of Baseball. Mr. Selig is the former owner of an MLB Franchise.

25.     The Commissioner is the "Chief Executive Officer of Major League Baseball." [8] Serving in this capacity, Mr. Selig has the power to, among other things, discipline players, announce rules and procedures, and preside over meetings. [9]

26.     Mr. Selig also has "executive responsibility for labor relations," [10] meaning that Mr.

---

[7] *See* Exhibit B, Major League Constitution ("MLC"), Art. II § 1.

[8]  MLC Art. II § 2.

[9] MLC Art. II §§ 2, 3.

[10] MLC Art. II § 2.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

Selig is the chief bargaining agent for the owners during negotiations with the major league union.

27.       Since he oversees all labor matters, Mr. Selig is also assumedly the chief agent for the owners when it comes to forming labor practices involving minor leaguers, and he owes a duty to the owners to act in their best interest. Moreover, Mr. Selig implements, enforces, and often directs the development of MLB's rules, guidelines, and policies concerning the employment of minor league players.

28.       Mr. Selig also serves as MLB's agent in numerous other areas. For instance, Mr. Selig serves as "the fiscal agent of the Major League Central Fund"; has the power to "negotiate and enter into settlement agreements" for nationwide broadcasting rights; can receive funds "made payable to the Commissioner as agent for the Clubs"; and can even invest central funds on behalf of the Defendants. [11]

29.       The MLB owners elect the Commissioner of Baseball by a vote. [12] They also pay the Commissioner's salary. [13]

30.       Under the broad meaning of "employ" and "employer" used by the FLSA and the applicable state laws, which allow a chief executive to be held jointly and severally liable, Mr. Selig employed (and/or continues to employ) Plaintiffs, all similarly situated employees, and all employees of the proposed classes. As described later in this complaint, Mr. Selig oversees and closely controls many aspects central to the minor leaguers' employment, including, *inter alia*, hiring, contract terms, discipline and firing, amount of wages, on-field work rules, and when wages are to be paid. [14]

---

[11] MLC Art. X; *see also* MLR 30 (saying that all funds in the hands of the Commissioner are joint funds of the MLB Clubs).

[12] MLC Art. II §§ 8, 9.

[13] MLC Art. II § 8.

[14] *See* MLR Attachment 3, Minor League Uniform Player Contract ("UPC") ¶¶ VI (describing the conditions of employment), VII (payment of salaries), XXIII (granting Commissioner right to suspend the contract), XXVI (requiring approval by the Commissioner for the contract to have effect); *see also, e.g.*, Addendum C to MLR Attachment 3 (salary form requiring approval by the Commissioner); MLR 4 (giving Commissioner power to oversee the amateur draft, one of the chief avenues of hiring players); MLR 13 (giving Commissioner the power to

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

31.     Upon information and belief, and as described more fully below, Mr. Selig also had direct involvement in the formation of programs affecting working conditions for minor leaguers, such as the unilateral implementation of drug testing in 2001 and HGH testing in 2010, as well as the implementation of a system to suppress signing bonuses for minor leaguers entering MLB's developmental system for the first time. The Commissioner also has implemented and oversees a tobacco policy, and all minor leaguers must abide by the policy.[15]

32.     **Franchise Defendants.** The below named MLB franchises are defendants in this lawsuit and referred to collectively as the "Franchise Defendants":

33.     *Kansas City Royals.* Kansas City Royals Baseball Corp. (d/b/a "Kansas City Royals") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Kansas City Royals employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

34.     *Miami Marlins.* Miami Marlins, L.P. (d/b/a "Miami Marlins") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Miami Marlins employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes. The Miami Marlins were known and operated as the Florida Marlins until changing its name in 2012. Plaintiffs are informed and believe that the Miami Marlins is the successor in interest to the Florida Marlins franchise.

35.     *San Francisco Giants*. San Francisco Baseball Associates LLC (d/b/a "San Francisco Giants") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the San Francisco Giants employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

36.     *Boston Red Sox.* Boston Red Sox Baseball Club L.P. (d/b/a "Boston Red Sox") is

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

---

suspend players); MLR 3(e) (requiring all contracts to be approved by the Commissioner); MLR 14 (giving Commissioner the power to accept or deny an application for retirement); MLR 15 (giving Commissioner power to place players on an Ineligible List for misconduct, or to take any other disciplinary action in the best interest of baseball).

[15] MLR Attachment 3, UPC ¶ VI.E.

an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf,

the Red Sox of baseball).employed (and/or continue to employ) Plaintiffs, similarly situated

employees, and/or employees of the Proposed Classes.

37.     *Toronto Blue Jays.* Rogers Blue Jays Baseball Partnership (d/b/a "Toronto Blue

Jays") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own

behalf, the Toronto Blue Jays employed (and/or continue to employ) Plaintiffs, similarly situated

employees, and employees of the Proposed Classes.

38.     *Chicago White Sox.* Chicago White Sox Ltd. (d/b/a "Chicago White Sox") is an

MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the

Chicago White Sox employed (and/or continue to employ) Plaintiffs, similarly situated employees,

and employees of the Proposed Classes.

39.     *Cleveland Indians.* Cleveland Indians Baseball Co., L.P., and Cleveland Indians

Baseball Co, Inc., (d/b/a "Cleveland Indians") is an MLB Franchise. As a member of Major League

Baseball, acting jointly and on its own behalf, the Cleveland Indians employed (and/or continue to

employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

40.     *Houston Astros.* Houston Baseball Partners LLC (d/b/a "Houston Astros") is an

MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the

Houston Astros employed (and/or continue to employ) Plaintiffs, similarly situated employees, and

employees of the Proposed Classes.

41.     *Los Angeles Angels of Anaheim.* Angels Baseball LP (d/b/a "Los Angeles Angels of

Anaheim") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its

own behalf, the Los Angeles Angels of Anaheim employed (and/or continue to employ) Plaintiffs,

similarly situated employees, and employees of the Proposed Classes.

42.     *Oakland Athletics.* Athletics Investment Group, LLC (d/b/a "Oakland Athletics") is

an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf,

the Oakland Athletics employed (and/or continue to employ) Plaintiffs, similarly situated

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

employees, and employees of the Proposed Classes.

43. *Seattle Mariners.* Baseball Club of Seattle, LLP (d/b/a "Seattle Mariners") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Seattle Mariners employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

44. *Cincinnati Reds.* The Cincinnati Reds, LLC (d/b/a "Cincinnati Reds") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Cincinnati Reds employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

45. *St. Louis Cardinals.* St. Louis Cardinals, LLC (d/b/a "St. Louis Cardinals") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the St. Louis Cardinals employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

46. *Colorado Rockies.* Colorado Rockies Baseball Club, Ltd. (d/b/a "Colorado Rockies") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Colorado Rockies employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

47. *San Diego Padres.* Padres L.P., and the San Diego Padres Baseball Club, L.P. (d/b/a "San Diego Padres") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the San Diego Padres employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

48. *Minnesota Twins.* Minnesota Twins, LLC (d/b/a "Minnesota Twins") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Minnesota Twins employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

49. *Washington Nationals.* Washington Nationals Baseball Club, LLC (d/b/a

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

"Washington Nationals") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Washington Nationals employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

50.     *Detroit Tigers.* Detroit Tigers, Inc. (d/b/a "Detroit Tigers") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Detroit Tigers employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

51.     *Los Angeles Dodgers.* Los Angeles Dodgers, LLC, and Los Angeles Dodgers Holding Co., (d/b/a "Los Angeles Dodgers") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Los Angeles Dodgers employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

52.     *New York Mets.* Sterling Mets L.P. (d/b/a "New York Mets") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the New York Mets employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

53.     *Atlanta Braves.* Atlanta National League Baseball Club, Inc. (d/b/a "Atlanta Braves") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Atlanta Braves employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

54.     *Arizona Diamondbacks.* AZPB L.P. (d/b/a "Arizona Diamondbacks") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Arizona Diamondbacks employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

55.     *Baltimore Orioles.* Baltimore Orioles, Inc., and Baltimore Orioles, L.P., (d/b/a "Baltimore Orioles") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Baltimore Orioles employed (and/or continue to employ) Plaintiffs,

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

similarly situated employees, and employees of the Proposed Classes.

56.     *Philadelphia Phillies.* The Phillies L.P. (d/b/a "Philadelphia Phillies") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Philadelphia Phillies employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

57.     *Pittsburgh Pirates.* Pittsburgh Baseball, Inc., and Pittsburgh Baseball P'ship, (d/b/a "Pittsburgh Pirates") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Pittsburgh Pirates employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

58.     *New York Yankees.* New York Yankees Partnership (d/b/a "New York Yankees") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the New York Yankees employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

59.     *Tampa Bay Rays.* Tampa Bay Rays Baseball Ltd. (d/b/a "Tampa Bay Rays") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Tampa Bay Rays employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

60.     *Chicago Cubs.* Chicago Baseball Holdings, LLC (d/b/a "Chicago Cubs") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Chicago Cubs employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

61.     *Milwaukee Brewers.* Milwaukee Brewers Baseball Club, Inc., and Milwaukee Brewers Baseball Club, L.P., (d/b/a "Milwaukee Brewers") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Milwaukee Brewers employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

62.     *Texas Rangers.* Rangers Baseball Express, LLC, and Rangers Baseball, LLC, (d/b/a "Texas Rangers") is an MLB Franchise. As a member of Major League Baseball, acting jointly and on its own behalf, the Texas Rangers employed (and/or continue to employ) Plaintiffs, similarly situated employees, and employees of the Proposed Classes.

## III.     CLASS ACTION ALLEGATIONS

63.     Plaintiffs bring the state law claims, Counts 3 through 23 of this action, as class actions under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated. The state classes are as follows:

64.     **California Class.** For Counts 3 through 5 and 7 through 10 (violations of California wage and labor laws), the California Class is defined as follows: all minor leaguers employed by Defendants under uniform player contracts ("UPC") who worked, will work, and/or continue to work as minor leaguers in the state of California at any time four years before the filing of this action until its resolution. Excluded from the California Class are Defendants and their officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants. Also excluded are the Court and any members of the Court's immediate family, counsel for plaintiffs, as well as persons who submit timely and proper requests for exclusion from the California Class.

65.     The California Class Representatives consist of Plaintiffs Yadel Marti and Jorge Jimenez.

66.     *California Waiting Time Subclass.* Count 6 of this complaint seeks waiting time penalties under California Labor Code § 203 for the withholding of wages after employment ceases. Consequently, Count 6 requires a subclass within the California Class. The California Waiting Time Subclass will consist of the following: all Plaintiffs and members of the California Class whose employment relationship with the Defendants has already ceased, and/or ceases during the course of this action.

67.     **Florida Class.** For Count 11 (violations of Florida's Minimum Wage Law), the Florida Class is defined as follows: all minor leaguers employed by Defendants under UPCs

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

who worked, will work, and/or continue to work as minor leaguers in the state of Florida at any time five years before the filing of this action until its resolution. Excluded from the Florida Class are Defendants and their officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants. Also excluded are the Court and any members of the Court's immediate family, counsel for plaintiffs, as well as persons who submit timely and proper requests for exclusion from the Florida Class.

68. The Florida Class Representatives consist of Plaintiffs Jorge Jimenez, Edwin Maysonet and Jose Diaz.

69. **Arizona Class.** For Counts 12 and 13 (violations of Arizona wage laws), the Arizona Class is defined as follows: all minor leaguers employed by Defendants under UPCs who worked, will work, and/or continue to work as minor leaguers in the state of Arizona at any time three years before the filing of this action until its resolution. Excluded from the Arizona Class are Defendants and their officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants. Also excluded are the Court and any members of the Court's immediate family, counsel for plaintiffs, as well as persons who submit timely and proper requests for exclusion from the Arizona Class.

70. The Arizona Class Representatives consist of Plaintiffs Yadel Marti, Helder Velazquez and Jorge Minyety.

71. **Pennsylvania Class.** For Counts 14 and 15 (violations of Pennsylvania's wage laws), the Pennsylvania Class is defined as follows: all minor leaguers employed by Defendants under UPCs who worked, will work, and/or continue to work as minor leaguers in the state of Pennsylvania at any time three years before the filing of this action until its resolution. 43 Penn. Stat. § 200.9a. Excluded from the Pennsylvania Class are Defendants and their officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants. Also excluded are the Court and any members of the Court's immediate family, counsel for plaintiffs, as well as persons who submit

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

timely and proper requests for exclusion from the Pennsylvania Class.

72.     The Pennsylvania Class Representative is Edgardo Baez.

73.     **Maryland Class.** For Counts 16 and 17 (violations of Maryland's wage laws), the Maryland Class is defined as follows: all minor leaguers employed by Defendants under UPCs who worked, will work, and/or continue to work as minor league players in the state of Maryland at any time three years before the filing of this action until its resolution. Excluded from the Maryland Class are Defendants and their officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants. Also excluded are the Court and any members of the Court's immediate family, counsel for plaintiffs, as well as persons who submit timely and proper requests for exclusion from the Maryland Class.

74.     The Maryland Class Representative is Edgardo Baez.

75.     **Oregon Class.** For Counts 18 and 19 (violations of Oregon wage laws), the Oregon Class is defined as follows: all minor leaguers employed by Defendants under UPCs who worked, will work, and/or continue to work as minor leaguers in the state of Oregon at any time six years before the filing of this action until its resolution. Excluded from the Oregon Class are Defendants and their officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants. Also excluded are the Court and any members of the Court's immediate family, counsel for plaintiffs, as well as persons who submit timely and proper requests for exclusion from the Oregon Class.

76.     The Oregon Class Representative is Jorge Minyety.

77.     *Common characteristics of the Proposed Classes*. All of the Proposed Classes share the following characteristics, making them all optimal for class resolution:

78.     Each of the Proposed Classes is so numerous that joinder of all members is impracticable. While the exact number of Class members in each Class is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that several hundred (and in the case of the Florida and Arizona Classes several thousand) geographically-dispersed Class members

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

worked, will work, and continue to work as minor leaguers in each of the applicable states, either during spring training, at promotional events, during other training and work periods, or during championship seasons occurring within the states.

79.     Plaintiffs' claims are typical of the claims of the other members of each of the Proposed Classes. Plaintiffs and the members of the Proposed Classes were subject to the same or similar compensation practices arising out of Defendants' common course of conduct in violation of the federal and state laws as alleged herein. Plaintiffs and the Proposed Classes have sustained similar types of damages as a result of these common practices.

80.     Plaintiffs will fairly and adequately protect the interests of the members of all members of the Proposed Classes because they possess the same interests and suffered the same general injuries as class members. Plaintiffs have retained counsel competent and experienced in class action litigation, including employment litigation.

81.     Common questions of law and fact exist as to all members of the Proposed Classes and predominate over any questions affecting solely individual members of the Class. Among the many questions of law and fact common to the Proposed Classes are:

(a) whether Defendants set wages at a rate below the minimum wages required under the applicable laws;

(b) whether Defendants paid and continue to pay no wages at all during certain pay periods, contrary to the requirements of applicable laws;

(c) whether any exemptions apply to the industry or to minor leaguers;

(d) whether Defendants require all minor leaguers to sign the same UPC, which controls minor leaguers' pay and pay periods and enables the unlawful practices;

(e) whether all minor leaguers signed substantially the same UPC;

(f) whether Defendants willfully, or with reckless disregard, carried out their unlawful practices;

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

(g) the compensability of certain work periods and the appropriate method of measuring damages for the injuries sustained by Plaintiffs and other members of the Proposed Classes as a result of Defendants' unlawful activities; and

(h) Whether Defendants have acted or refused to act on grounds generally applicable to the Plaintiff Class, thereby making final injunctive or declaratory relief appropriate with respect to the Plaintiff Class as a whole.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members in each of the Proposed Classes is impracticable. The prosecution of separate actions by individual members of the Proposed Classes would impose heavy burdens on the courts and the parties, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

83.     The interest of members of each of the Proposed Classes in individually controlling the prosecution of separate actions is highly limited and impractical. Each of the Proposed Classes has a high degree of cohesion and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, are often not great individually. As individuals, the class members would lack the resources to vigorously litigate against the ample and powerful resources of the Defendants' cartel. Importantly, many of the Class members are current minor league players and would not bring an individual action out of fear of retaliation. Lastly, Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

## IV.        FLSA COLLECTIVE ACTION ALLEGATIONS

84.     Plaintiffs Yadel Marti, Edgardo Baez, Helder Velazquez, Jorge Jimenez, Edwin Maysonet, Jorge Minyety and Jose Diaz bring Counts I and II, the FLSA claims, on behalf of themselves and all persons similarly situated since three years before the filing of this action until its resolution (the "Minor League Collective").

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

85.     The Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the members of the Minor League Collective. The Minor League Collective consists of thousands of similarly situated individuals who have been, will be, and/or continue to be underpaid during certain work periods and not paid at all during other work periods. This Collective would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

86.     The members of the Minor League Collective are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the members of the Collective pursuant to 29 U.S.C. § 216(b).

## V.     JURISDICTION, VENUE, AND COMMERCE

87.     This Court has subject matter jurisdiction with respect to Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

88.     Plaintiffs' state law claims are so closely related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

89.     Additionally and/or alternatively, this Court has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Proposed Classes exceeds $5,000,000 and there are members of the Proposed Classes who are citizens of a different state than Defendants, as well as members of the Proposed Classes who are citizens of a foreign state.

90.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

91.     All Defendants are subject to personal jurisdiction in California since all Defendants transact a significant amount of business in California.

92.     Defendants' conduct had a direct, substantial, and reasonably foreseeable effect on interstate commerce. The Defendants host baseball games, operate baseball leagues, and

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

transact business in multiple states. The Defendants routinely use instruments of interstate commerce, such as interstate railroads, highways, waterways, wires, wireless spectrum, and the U.S. mail, to carry out their operations.

93.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District. All the Defendants transact business in the Northern District of California; two MLB Franchises are located in the Northern District of California; Plaintiff Yadel Marti was employed by the Oakland Athletics and worked for a significant period of time at the Oakland Athletics' minor league affiliates in Stockton, California and Sacramento, California. Additionally, it is believed that one of MLB's officers resides within this District.

94.     Upon information and belief, each Franchise employs minor leaguers from California, which routinely ranks as the number one provider of minor leaguers in the United States.

95.     Five Franchises are located in California, and an entire minor league is located within the state.

96.     All causes of action asserted in this Complaint are closely related to one another and each accrued under the same common set of facts and share a common nucleus of operative facts. Each cause of action emanates from the same uniform contract, from the same policies and practices, as applied to the same group of employees.

## VI.     FACTUAL ALLEGATIONS

### I.     The Business of MLB

97.     MLB is big business. Its games are broadcast throughout the United States. During the 2013 season, over 74 million fans paid to attend MLB games.

98.     In 2012, revenue for MLB and its thirty teams surpassed $7.5 billion. Annual revenue is expected to reach $9 billion dollars in 2014.[16]

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

---

[16] *See* Maury Brown, *MLB Revenues $7.5B for 2012, Could Approach $9B by 2014*, Biz of Baseball (Dec. 10, 2012), http://www.bizofbaseball.com/?catid=30:mlb-news&id=5769:mlb-revenues-75b-for-2012-could-approach-9b-by-2014&Itemid=42&option=com_content&view=article.

99.      Franchise values for the thirty MLB teams have grown as well. The average value of the thirty Franchises is estimated at $744 million each.[17]

100.     The baseball players employed by the Defendants account for much of this rise in revenue, as they comprise the chief product offered by MLB and its teams. Without baseball players, MLB and its teams would not exist. Yet MLB and its Franchises pay most players—the minor leaguers—wages that fall well below minimum wage. They also fail to pay required overtime pay, and often fail to pay wages at all for work performed.

## II.      Minor Leaguers' Uniform, Adhesive Contracts

101.     Since the 1920s, all MLB teams have used an extensive "farm system" to develop players. MLB teams employ a small number of major leaguers that perform in MLB stadiums at the game's highest level. MLB Rules allow Franchises to only maintain 25 major leaguers on an "active roster" and a few additional players reserved on the "40-man" roster. A few more players are inevitably on the major league disabled list, so each Franchise employs a little over 40 major leaguers.

102.     But each Franchise simultaneously stockpiles around 150 to 250 minor leaguers that perform at the minor league levels of baseball. It is estimated that, at any given time, the Defendants collectively employ around 6,000 minor leaguers total. The Defendants employ this high number of minor leaguers in their farm systems, hoping some will eventually develop into major leaguers.

103.     Minor leaguers have no union. Without a union to counteract MLB's power, MLB and its teams have exploited minor leaguers by, among other things, continuing to promulgate and impose oppressive rules on minor leaguers' entry into the industry and on contracts, salaries, and other working conditions.

104.     The MLB teams acquire minor leaguers in one of two ways: through an amateur

---

[17] Mike Ozanian, *Baseball Team Valuations 2013: Yankees on Top at $2.3 Billion*, Forbes (Mar. 27, 2013), http://www.forbes.com/sites/mikeozanian/2013/03/27/baseball-team-valuations-2013-yankees-ontop-at-2-3-billion/.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

draft or through free agency.

105.     The amateur draft, known as MLB's Rule 4 draft,[18] occurs in June of each year. The genesis of the Rule 4 draft is instructive on the Commissioner's involvement in developing and enforcing MLB's policies on payments to major leaguers. Since at least World War II, the Defendants have sought to suppress signing bonuses for the most talented amateur players.[19] Various solutions were proposed, but none seemed to work.

106.     In 1965, Commissioner Ford Frick oversaw the development and implementation of what is now the Rule 4 draft. By forcing amateur players to participate in the draft, MLB and its Commissioner limited those players seeking to enter MLB's developmental system to only negotiating with a single team. Thus, signing bonuses declined.

107.     Upon information and belief, Bud Selig sought to further curb signing bonuses for draftees in the late 1990s. Acting in his capacity as chief labor agent,[20] he directed the development and implementation of an informal "slotting" system with recommended signing bonuses for each high level pick. To enforce the mechanism, Mr. Selig required a Franchise's scouting director to call the Commissioner's office prior to exceeding the recommended slot level. This requirement of approval is an outgrowth of MLB's rules, which require all minor league contracts to be filed with and approved by Mr. Selig.[21]

108.     Not satisfied with an informal slotting system, Mr. Selig sought the implementation of a more formal, mandatory slotting system. At his direction, a new, stricter system was instituted in 2012. The current system places limits on the amounts Franchises can spend on signing bonuses.

---

[18] MLR 4.

[19] MLB teams offer large signing bonuses to the most talented amateur players as an incentive to forego college. Only the very top amateurs, however, receive large signing bonuses. The majority of amateurs signed through the draft receive quite small signing bonuses, usually around $2500.

[20] MLC Art. II § 2.

[21] *See* MLR 3(e) (requiring all contracts to be approved by the Commissioner); MLR Attachment 3, UPC ¶ XXVI (requiring approval by the Commissioner for the contract to have effect).

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

109.     MLB's current Rule 4 draft, as developed and enforced by the Commissioner, requires all amateur players from the United States, Canada, and Puerto Rico to participate in the draft in order to sign with an MLB team.[22] Beginning with the worst MLB team from the previous season, teams select previously amateur players over the course of forty rounds.

110.     Players selected in the Rule 4 draft are between the ages of 18 and 22 (with the exception of a few players who are 23). Once selected by a Franchise, a player cannot bargain with any other Franchise, as MLB's rules grant the drafting Franchise exclusive rights to the player.[23]

111.     In addition to the draft, teams acquire previously amateur Latin American players through free agency. The Dominican Republic, followed by Venezuela, produces the most Latin American players. MLB rules allow the Franchises to sign the players as early as age sixteen, so most Latinos are either sixteen or seventeen when signing with a Franchise.[24]

112.     Most Latino minor leaguers come from poor families and have only the equivalent of an eighth grade education. Before signing, many are only represented by similarly-educated "buscones"—usually former players who maintain training facilities for young amateur players. Some of the Franchises' scouts have been reprimanded in recent years for participating in bribes and kickback schemes with the buscones, and the FBI has even investigated the exploitative practices.[25] These Latino signees comprise over forty percent of minor leaguers.

113.     Similar to the slotting system, Mr. Selig also personally oversaw the development of bonus pools for Latino players in an effort to curtail Latino signing bonuses. Instituted in 2012, Mr. Selig's plan allows each Franchise a certain amount to spend on signing

---

[22] MLR 4(a).

[23] MLR 4(e).

[24] *See* MLR 3(a).

[25] *See* Jorge L. Ortiz, *Exploitation, steroids hitting home in Dominican Republic*, USA Today (Mar. 26, 2009), http://usatoday30.usatoday.com/sports/baseball/2009-03-26-dominican-republic-cover_N.htm.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

bonuses for Latino players.

114.     Teams also sign additional players from the United States, Canada, and Puerto Rico who were not drafted in the Rule 4 draft.[26] MLB rules place limits on when such free agent acquisitions can occur. Since they were not selected in the draft, they are viewed as less skilled amateur players and, even as free agents, have no bargaining power.

115.     MLB operates a scouting service known as the Major League Baseball Scouting Bureau that evaluates amateur players on the behalf of all the Defendants. MLB owners created the centralized service in 1974, and it operates under the umbrella of the Office of the Commissioner. The Scouting Bureau routinely hosts tryouts for amateur players seeking to enter the industry, and its scouts attend amateur games throughout the entire country and in Latin America to develop reports on amateur players. The Scouting Bureau additionally requests that amateur players fill out informational cards and, sometimes, psychological tests. All the Franchises have access to these evaluations, and it is believed that they use them when making draft and free agent acquisitions.

116.     MLB rules, as implemented and enforced by the Defendants and the Commissioner, require all teams to use the same uniform player contract ("UPC") when signing these previously amateur players. MLR 3(b)(2) states:

> To preserve morale among Minor League players and to produce the similarity of conditions necessary for keen competition, all contracts…shall be in the form of the Minor League Uniform Player Contract that is appended to these Rules as Attachment 3. All Minor League Uniform Player Contracts between either a Major or a Minor League Club and a player who has not previously signed a contract with a Major or Minor League Club shall be for a term of seven Minor League playing seasons….The minimum salary in each season covered by a Minor League Uniform Player Contract shall be the minimum amount established from time to time by the Major League Clubs….

117.     Moreover, "[a]ll contracts shall be in duplicate," and "[a]ll…must be filed with the Commissioner…for approval."[27] No contract can vary any term without the approval of the

---

[26] MLR 4(i).

[27] MLR 3(b)(3); *see also* MLR 3(b)(4) (saying that a player cannot play until the UPC is signed).

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

Commissioner.[28] A minor leaguer cannot work for an MLB team without signing the UPC because a "player's refusal to sign a formal contract shall disqualify the player from playing with the contracting Club or entering the service of any Major or Minor League Club."[29]

118.     Thus, the UPC grants the MLB team the exclusive rights to the minor leaguer for seven championship seasons (about seven years).[30] During that time period, the MLB team may assign the minor leaguer's rights to any other team, and the MLB team may terminate the agreement at any time for almost any reason.[31]

119.     But the minor leaguer cannot leave voluntarily to play for another baseball team—even outside of MLB, and even outside of the United States.[32] A player doing so "shall be subject to the discipline of the Commissioner."[33] Retirement from baseball during the seven-year term even requires the Commissioner's approval.[34]

120.     The UPC traps a player in the minor leagues of a single organization. A minor leaguer selected in the amateur draft can only sign with the MLB team that drafted him. For the next seven years, the MLB team controls the minor leaguer's rights. By the expiration of the contract, much of the value of the minor leaguer as a young prospect has expired because the player has aged.

121.     Since the signing of a 1962 Player Development Plan, MLB requires MLB Franchises to maintain a certain number of minor league teams. Commissioner Frick oversaw this requirement, even testifying before Congress about the need for maintaining a high number of minor league teams. Currently, all MLB teams have minor league teams at all the levels of

---

[28] MLR 3(b)(3).

[29] MLR 3(d).

[30] MLR 3(b)(2); MLR Attachment 3, UPC ¶ VI.A.

[31] MLR 9; MLR Attachment 3, UPC ¶ XVIII.

[32] MLR 18; MLR Attachment 3, UPC ¶ XVI.

[33] MLR 18.

[34] MLR 14.

the minor leagues, with most having either seven or eight minor league teams.

122.     Often the MLB Franchises do not operate the minor league stadium but instead sign agreements with owners of minor league teams. These agreements are known as Player Development Contracts ("PDC"), and the teams are affiliates of the MLB Franchises.

123.     MLB rules make clear that MLB and its Franchises remain the employers of minor leaguers at all times when using PDCs. MLR 56(g) states:

> The players so provided shall be under contract exclusively to the Major League Club and reserved only to the Major League Club. The Minor League Club shall respect, be bound by, abide by and not interfere with all contracts between the Major League Club and the players that it has provided to the Minor League Club.

124.     Moreover, MLB requires the MLB Franchise to pay the salaries of the minor league players at all times and allows the MLB Franchise the ability to control assignments.[35]

125.     MLB's rules also mandate that the Franchises "select and employ" and "compensate and provide benefits for" the minor league "managers, coaches, instructors and trainers" at all times during a PDC agreement.[36] These coaches and instructors, directed by MLB and MLB's Franchises and working under MLB's rules, oversee the daily work of the players. The MLB Franchise consequently "makes all decisions related to player development, including selecting the coaching staff and deciding which players to assign to the team."[37]

126.     The minor league party to the PDC, on the other hand, has little control over players. MLR 56(g) merely requires the minor league party to furnish uniforms, share in the cost of bats and balls, and maintain the minor league stadium.

### III.     The Illegal Minor League Salaries

127.     Since minor leaguers do not belong to a union, nothing has prevented the

[35] MLR 56(g).

[36] MLR 56(g).

[37] *MiLB.com Frequently Asked Questions*, MiLB.com, http://www.milb.com/milb/info/faq.jsp?mc=business#3 (last visited Dec. 17, 2013).

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

Defendants from artificially and illegally depressing minor league wages. Given that MLB carefully controls the entryway into the highest levels of baseball, and given the young minor leaguer's strong desire to enter the industry, MLB and the Defendants have exploited minor leaguers by paying salaries below minimum wage, by not paying overtime wages, and by often paying no wages at all.

128.    Plaintiffs are informed and believe that MLB and the Commissioner issue minor league salary guidelines for players signed to an initial UPC, and teams deviate very little from these guidelines. MLR 3(c) requires that all first-year minor leaguers earn "the amount established by" MLB.[38] It is currently believed that all first-year minor leaguers employed by the Defendants must earn $1,100 per month.

129.    Salaries beyond the first year are very similar across all Franchises. It is believed that discussions regarding minor league salaries (and other working conditions concerning minor leaguers) occur when MLB hosts its quarterly owner meetings that all Defendants attend.

130.    While salary guidelines are not publicly available, the Plaintiffs are informed and believe, based on the salaries paid by the Defendants across the minor leagues, that MLB currently imposes the following salaries, paid only during the championship season: $1,100 per month for Rookie and Short-Season A; $1,250 per month for Class-A; $1,500 per month for Class-AA; and $2,150 for Class-AAA.

131.    Beyond the first year, the UPC required by MLB, and enforced by Mr. Selig, purports to allow salary negotiation by the minor leaguer, as the UPC states that salaries will be set out in an addendum to the UPC and subject to negotiation.[39] But the same UPC provision states that if the Franchise and minor leaguer do not agree on salary terms, the Franchise may unilaterally set the salary and the minor leaguer must agree to it.[40]

132.    In truth, then, the UPC—and Mr. Selig as enforcer—does not allow for minor

---

[38] As the 2013 Miami Marlins Minor League Player Guide states, "all first-year players receive $1,100 per month regardless of playing level per the terms of the [UPC]."

[39] MLR Attachment 3, UPC ¶ VII.A.

[40] MLR Attachment 3, UPC ¶ VII.A.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

league salary negotiations. It is believed that the Franchises simply follow MLB's salary guidelines, and the minor leaguers must accept them. As the 2013 Miami Marlins Minor League Player Guide states, "This salary structure will be strictly adhered to; therefore, once a salary figure has been established and sent to you, there will be NO negotiations."

133.     MLB also centrally controls when and how minor leaguers are paid. During the championship season, the Franchises must pay minor leaguers "in two (2) semi-monthly installments on the 15th day and last day of the month."[41]

134.     The UPC required by MLB, and enforced by Mr. Selig, further states that salaries are only to be paid during the championship season, which lasts about five months out of the year. [42] Plaintiffs believe that most minor leaguers earn less than $7,500 per calendar year. Some earn $3,000 or less. Despite only being compensated during the approximately five-month championship season, MLB's UPC "obligates minor leaguers to perform professional services on a calendar year basis, regardless of the fact that salary payments are to be made only during the actual championship playing season." [43] Consistent with that obligation, the UPC states that "Player therefore understands and agrees that Player's duties and obligations under this Minor League Uniform Player Contract continue in full force throughout the calendar year."

135.     MLB's UPC, and the Defendants' application of the UPC, requires the minor leaguer to participate in spring training.[44] Again, the UPC does not allow for salaries during this period since spring training falls outside the championship season, so minor leaguers work without earning a paycheck. The spring training season usually lasts around one month, during the month of March, but it sometimes lasts longer.

136.     Around 30–50 minor leaguers per MLB Franchise do not earn a roster spot on a

---

[41] MLR Attachment 3, UPC ¶ VII.B.

[42] MLR Attachment 3, UPC ¶ VII.B. ("Obligation to make such payments to Player shall start with the beginning of Club's championship playing season…[and] end with the termination of Club's championship playing season….").

[43] MLR Attachment 3, UPC ¶ VI.B.

[44] *See* MLR Attachment 3, UPC ¶ VI.B. (saying that the UPC applies to the "Club's training season").

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

minor league team at the end of spring; they instead remain at the Franchise's spring training site in "extended spring training." Since they are not participating in a championship season, MLB's UPC again does not require salaries to be paid.[45] Upon information and belief, many of these players will not earn paychecks until the end of June, when the Rookie and Short-Season A leagues begin. Thus, many minor leaguers are not paid for work performed during March, April, May, and most of June.

137.     At the end of the championship season, around 30–45 minor leaguers per MLB Franchise are also selected to participate in an instructional league to further hone their skills. Again, MLB's UPC—as approved and enforced by Mr. Selig—requires minor leaguers to perform this work without pay since it is outside the championship season, so the minor leaguers receive no paychecks during the instructional league.[46] The instructional leagues usually last around one month.

138.     MLB's UPC also requires minor leaguers to maintain "first-class" conditioning throughout the calendar year[47] because the player's "physical condition is important to…the success of the Club."[48] Consequently, a "Club may require Player to maintain Player's playing condition and weight during the off-season and to report for practice and condition at such times and places as Club may determine."[49] If the player fails to meet these requirements, the "Club may impose a reasonable fine upon Player…."[50]

139.     Carrying out this provision of MLB's UPC, the Defendants therefore require players to perform extensive training and conditioning during the winter off-season. It is believed that all Franchises direct the winter work by issuing training packets to all the players. Many, and perhaps all, Franchises monitor workouts and punish players for not performing off-

[45] MLR Attachment 3, UPC ¶ VII.B.

[46] MLR Attachment 3, UPC ¶ VII.B.

[47] MLR Attachment 3, UPC ¶ XII.

[48] MLR Attachment 3, UPC ¶ VI.D.

[49] MLR Attachment 3, UPC ¶ VI.D.

[50] MLR Attachment 3, UPC ¶ VI.D.

season workouts. Per MLB's required UPC, as approved by Mr. Selig, minor leaguers receive no wages during this training period because it is outside the championship season.[51]

140.     In sum, the Defendants, as directed by Mr. Selig, pay illegally low wages during the championship season, no overtime wages, and no wages for work performed outside the championship season. As demonstrated below, the cartel requires players to work very long hours, further demonstrating the illegality of the wage scheme.

### IV.     The Long Hours Worked By Minor Leaguers

141.     During the roughly five-month championship season, minor league teams play games either six or seven days per week. The minor leaguer enjoys a day off on average only once every 2–3 weeks.

142.     For Monday through Saturday games, minor leaguers must participate in mandatory pregame activities: stretching, batting practice, fielding practice, throwing, conditioning, etc. With games averaging around three hours in length, minor leaguers usually work around eight mandatory hours at the stadium on these days. For Sunday workdays, players also perform significant amounts of work.

143.     In a seven-day workweek—which is typical—the minor leaguer consequently works well in excess of forty hours at the stadium.

144.     As part of the maintenance of first-class conditioning required by MLB's UPC, players must also regularly perform strength and conditioning workouts during the season. These workouts are devised and supervised by strength coaches employed by MLB's Franchises. The required workouts thus add additional compensable time onto the minor leaguers' work schedule.

145.     Additionally, minor leaguers are required to perform protracted travel, usually by a team bus. Half of the games are played away from home, and the usual road trip often entails a handful of bus rides each lasting several hours.

146.     The minor leaguer arrives to the home stadium before beginning the trip; packs

---

[51] *See* MLR Attachment 3, UPC ¶ VII.B.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

belongings, bats, uniforms, gloves, and other things; loads the bus with these belongings and other items required by the team on the trip; and then proceeds on the trip. The minor leaguer performs a similar process prior to beginning each trip and reverses the process upon returning to the home stadium from the trip.

147.     This required team travel adds considerable amounts of work onto the player's workweek when on the road.

148.      Consequently, when strength and conditioning work and required travel work are added onto the workweek, minor leaguers often work over 60–70 hours per week during the season in Plaintiffs' experience.

149.     As stated above, minor leaguers also perform extensive work outside the championship season for which they earn no salary.

150.      Spring training usually lasts four weeks or more. Minor leaguers normally work seven days a week, as minor leaguers do not enjoy a day off during the spring training period unless rain renders the baseball fields unplayable.

151.     Minor leaguers perform considerable amounts of work during spring training, sometimes—and perhaps usually—exceeding forty hour workweeks. Again, MLB's UPC does not allow players to earn salaries during this time, much less overtime wages.[52]

152.     The 30–45 minor leaguers selected for instructional leagues perform a work schedule similar to that performed during spring training. A similar number of players often also attend a pre-spring training minicamp that involves similar work hours. And again, the minor leaguer earns no salary for this work.

153.     During the winter months of the off-season, minor leaguers work a few hours per day performing required training. This work is performed 4–6 days per week, depending on the month, and results in considerable unpaid hours. This training is not only required by the Franchises but also required by MLB's UPC.[53]

## VII.    FEDERAL WAGE AND HOUR VIOLATIONS

---

[52] *See* MLR Attachment 3, UPC ¶ VII.B.

[53] *See* MLR Attachment 3, UPC ¶¶ VI.D., XXII.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

**Count 1: FLSA Minimum Wage and Overtime Violations**

(Plaintiffs and the Minor League Collective Against All Defendants)

154.      Plaintiffs Yadel Marti, Edgardo Baez, Helder Velazquez, Jorge Jimenez, Edwin Maysonet, Jorge Minyety and Jose Diaz re-allege and incorporate by reference all allegations in all preceding paragraphs.

155.      As detailed above, the Defendants have engaged in a long-standing and widespread violation of the FLSA. The FLSA's minimum wage and overtime requirements, 29 U.S.C. §§ 201 et seq., and the supporting regulations, apply to all Defendants and protect Plaintiffs and the class members.

156.      At all relevant times, Plaintiffs and all the minor leaguers of the proposed class were (and/or continue to be) employees within the meaning of 29 U.S.C. § 203(e), and were (and/or continue to be) employed by covered enterprises and/or entities engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (r) and (s). The work also regularly involves interstate commerce.

157.      At all relevant times, the Defendants jointly employed (and/or continue to employ) Plaintiffs and all similarly-situated minor leaguers within the broad meaning of 29 U.S.C. §§ 203(d) and (g).

158.      The Defendants constructed, implemented, and engaged in a policy and/or practice of failing to pay Plaintiffs and all similarly-situated minor leaguers the applicable minimum wage for all hours the minor leaguers worked on behalf of Defendants, and continue to engage in such a policy and practice.

159.      Further, the Defendants constructed, implemented, and engaged in a policy and practice that failed to pay Plaintiffs and all similarly-situated minor leaguers the applicable overtime wage for all hours minor leaguers worked beyond the normal, forty-hour workweek, and continue to engage in such a policy and practice.

160.      Defendants also implemented and engaged in the policy and/or practice of failing to pay Plaintiffs and all similarly-situated minor leaguers any wages at all for many hours the minor leaguers worked on behalf of Defendants, and continue to engage in such

SAMUEL KORNHAUSER
LAW OFFICES
155 Jackson Street, Suite 1807
San Francisco, CA 94111

policies and practices.

161.        As a result of these minimum wage and overtime violations, Plaintiffs and all similarly-situated minor leaguers have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

162.        The Defendants' pattern of unlawful conduct was and continues to be willful and intentional, or the Defendants at least acted with reckless disregard. The Defendants were and are aware, or should have been aware, that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and all similarly-situated minor leaguers. Instead, the Defendants knowingly and/or recklessly disregarded federal wage and hour laws.

163.        All similarly-situated minor leaguers are entitled to collectively participate in this action by choosing to "opt-in" and submitting written Consents to Join this action. 29 U.S.C. § 216(b).

### Count 2: FLSA Recordkeeping Requirements

(Plaintiffs and the Minor League Collective Against All Defendants)

164.        Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

165.        The Defendants failed (and continue to fail) to make, keep, and preserve accurate records with respect to Plaintiffs and all similarly-situated minor leaguers, including hours worked each workday and total hours worked each workweek, as required by the FLSA, 29 U.S.C. § 211(c), and supporting federal regulations.

166.        The lack of recordkeeping has harmed the Plaintiffs and creates a rebuttable presumption that the employees' estimates of hours worked are accurate.[54]

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

---

[54] *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

# VIII.    STATE WAGE AND HOUR VIOLATIONS

167.    The state Counts seek to recover for all minor league work performed by the Proposed Classes, including (but not limited to) winter off-season work. Plaintiffs are informed and believe that, during the winter work periods, most minor leaguers return to the state where they were drafted, where they work without pay.

168.    Numerous minor leaguers are employed in the states enumerated as states for Proposed Classes of minor leaguers, making joinder of the minor leaguers employed in those states impracticable. Thus, Plaintiffs are informed and believe that all Defendants employed and continue to employ minor leaguers in each of the states enumerated in the Proposed Classes during the relevant time periods. Upon information and belief, Plaintiffs further allege that each of the Defendants violated the laws in each of the states enumerated in the Proposed Classes due to uncompensated winter off-season work and/or work performed during other portions of the year.

## Count 3: California Minimum Wage Violations

(The California Class Representatives and the California Class Against All Defendants)

(Violation of Cal. Labor Code §§ 1182.12, 1197 and 1198)

169.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

170.    Failure of an employer to pay its employees the minimum wage fixed by the California Labor Commission violates, *inter alia*, Labor Code sections 1182.12 and 1197.

171.    Defendants failed to pay California Class Representatives and California Class Members the minimum wage for all hours worked by requiring them to perform work without compensation.

172.    Pursuant to Labor Code sections 218 and 1194, California Class Representatives and California Class Members are entitled to recover in a civil action the unpaid balance of the full amount of the minimum wage for all hours worked.

173.    Labor Code section 558 provides that any employer who violates any provision

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

regulating hours and days of work shall be subject to civil penalties. As a result of Defendants' violation, California Class Representatives and California Class Members are entitled to and hereby seek civil penalties in the amount of $50 for the first violation and $100 for each subsequent violation.

174.     Labor Code section 218.6 provides for interest on all unpaid wages in any action brought for nonpayment of wages. California Class Representatives and California Class Members seek to recover interest on all unpaid wages due.

175.     California Class Representatives and California Class Members seek liquidated damages pursuant to Labor Code section 1194.2.

176.     California Class Representatives and California Class Members seek to recover all unpaid minimum wages, penalties, and interest due to them.

177.     As a result of Defendants' conduct, California Class Representatives and California Class Members are also entitled to attorneys' fees under Labor Code sections 218.5 and 1194, in addition to interest, expenses and costs of suit.

178.     Pursuant to California law, the Defendants are and were required to pay the California Class Representatives and the California Class a minimum wage set by California state law. Cal. Lab. Code §§ 1182 et seq. and 1197. The state's minimum wage requirements apply to the Defendants and protect the California Class Representatives and the California Class.

179.     The Defendants constructed, implemented, and engaged in a policy and/or practice of failing to pay the California Class Representatives and all of the California Class the applicable minimum wage for all hours they suffered or permitted the minor leaguers to work in the state, and they continue to engage in such practices.

180.     As a result of these minimum wage violations, the California Class Representatives and the California Class have suffered (and continue to suffer) damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

damages and other compensation pursuant to California Labor Code §§ 1194 and 1194.2.

181.     As a result of Defendants' conduct, California Class Representatives and California Class Members are also entitled to attorneys' fees under Labor Code sections 218.5 and 1194, in addition to interest, expenses and costs of suit.

182.     The Defendants pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with California's minimum wage requirements with respect to the compensation of the California Class Representatives and the California Class, and instead knowingly and/or recklessly disregarded state law.

## Count 4: California Unpaid Overtime Violations

(The California Class Representatives and the California Class Against All Defendants)

(Violation of California Labor Code §§ 510 and 1198)

183.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

184.     California Labor Code § 510 provides that work in excess of eight hours in a day, or 40 hours in a week, must be compensated at a rate not less than one and one-half times the regular rate of pay for an employee.

185.     Labor Code section 1198 makes unlawful the employment of any employee under conditions of labor prohibited by the applicable Wage Order.

186.     California Class Representatives and California Class Members work, or have worked, more than eight hours in a day and more than 40 hours in a week and were not paid at the overtime rate for all hours worked.

187.     Pursuant to Labor Code sections 218 and 1194, California Class Representatives and California Class Members are entitled to recover in a civil action the unpaid balance of the full amount of overtime compensation for all excess hours worked.

188.     Labor Code section 558 provides that any employer who violates any provision regulating hours and days of work shall be subject to civil penalties. As a result of Defendants' violations, California Class Representatives and California Class Members are entitled to and hereby seek civil penalties in the amount of $50 for the first violation and $100 for each subsequent violation.

189.     Labor Code section 218.6 provides for interest on all unpaid wages in any action brought for nonpayment of wages. California Class Representatives and California Class Members seek to recover interest on all unpaid wages due.

190.     California Class Representatives and California Class Members seek liquidated damages pursuant to Labor Code section 1194.2.

191.     California Class Representatives and California Class Members seek to recover all unpaid overtime wages, penalties, and interest due to them.

192.     California Class Representatives and California Class Members are also entitled to attorneys' fees under Labor Code sections 218.5 and 1194, in addition to interest, expenses and costs of suit.

193.     The laws of California require the Defendants to pay overtime compensation for work in excess of eight hours in a day or forty hours in a week, at a rate of one and one-half times the regular rate of pay for the employee. Cal. Lab. Code § 510. The laws of California further require employees to be compensated at twice the regular rate of pay for work in excess of twelve hours in one day. The state's overtime requirements apply to the Defendants and protect the California Class Representatives and the California Class members.

194.     Throughout the California Class period, the California Class Representatives and the California Class routinely worked (and continue to work) in excess of 8 hours per workday, sometimes work(ed) in excess of 12 hours in a workday, routinely work(ed) in excess of 40 hours in a workweek, usually work(ed) 7 days in a workweek and sometimes in excess of 8 hours on the seventh day of the workweek.

195.     The Defendants failed and continue to fail to pay the California Class Representatives and the California Class overtime wages as required by California Labor Code § 510.

196.     As a result of these violations, the California Class Representatives and the California Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to California Labor Code § 1194.

197.     As a result of these violations, and pursuant to California Labor Code § 558, the California Class Representatives and the California Class are also entitled to recover civil penalties in the amount of $50 per employee per violative pay period for initial violations and $100 per employee per violative pay period for subsequent violations.

198.     The Defendants pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with California's overtime requirements with respect to the compensation of the California Class Representatives and the California Class, and instead knowingly and/or recklessly disregarded state law.

### Count 5: Violation of California "Payday" Requirements

(The California Class Representatives and the California Class Against All Defendants)

199.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

200.     California law requires employers to pay employees on designated days at least twice per calendar month. Cal. Lab. Code § 204. Overtime wages must be paid no later than the payday following the payroll period during which overtime wages are earned. These requirements apply to the Defendants and protect the California Class Representatives and the California Class members.

201.     The Defendants failed and continue to fail to pay overtime wages in a timely manner as required by California Labor Code § 204.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

202.     As a result of these violations, the California Class Representatives and the California Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover penalties in the amount of $100 per pay period per employee for first-time violations and $200 per pay period per employee for subsequent violations, along with attorneys' fees and any other damages permitted by statute.

### Count 6: California Waiting Time Penalties

(The California Class Representatives and the California
Waiting Time Subclass Against All Defendants)

(Violation of Labor Code §§ 201, 202, 203 and 204)

203.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

204.     Labor Code section 201 requires an employer who discharges an employee to pay all compensation due and owing to the employee immediately upon the employee's discharge from employment. Labor Code section 202 requires an employer to pay within 72 hours all compensation due and owing to an employee who quits her employment. Labor Code section 204 provides that all wages earned by a person in employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays.

205.     Labor Code section 203 provides that if an employer willfully fails to pay all compensation due promptly upon discharge or resignation, as required by Sections 201 and 202, the employer shall be liable for waiting time penalties in the form of continued compensation for up to 30 work days.

206.     Defendants did not pay California Class Representatives and California Class Members semimonthly payments as required by Labor Code section 204. Further, California Class Representatives and California Class Members are informed and believe that Defendants

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

have failed to promptly pay all compensation due upon California Class Members' discharge or resignation.

207.     By failing to compensate California Class Representatives and California Class Members as required by law, Defendants have willfully failed to make timely payment of the full wages due to their employees who have resigned or been discharged.

208.     California Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due immediately upon discharge. California Labor Code § 203 states that if an employer fails to pay any wages to an employee who is discharged or quits, wages continue to accrue as a penalty for up to thirty days.

209.     The Defendants failed and continue to fail to pay minimum wages and overtime wages for work performed in California. These wages remained unpaid at the time the California Class Representatives and other members of the California Waiting Time Subclass were discharged or quit. Further, the Defendants failed to pay the wages within the time required by California Labor Code §§ 201 and 202 and continue to remain unpaid today.

210.     As a result of the Defendants conduct, the wages continue to accrue as a penalty for up to 30 days, as required by § 203. The California Class Representatives and members of the California Waiting Time Subclass are entitled to recover from Defendants this statutory penalty for each day unpaid up to the thirty-day maximum, together with interest, attorneys' fees, and costs.

### Count 7: California Itemized Wage Statement Violations

(The California Class Representatives and the California Class Against All Defendants)

(Violation of Labor Code § 226)

211.     The California Class Representatives re-allege and incorporate by reference all allegations in all preceding paragraphs.

212.     California Labor Code section 226( a) provides that, semimonthly or at the time of each payment of wage, an employer shall provide each employee with a wage statement

itemizing, among other things, the total hours worked by the employee in the pay period.

213. California Labor Code section 226(e) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code section 226(a) is entitled to recover the greater of his actual damages or a penalty of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period (up to a maximum of $4,000), in addition to attorneys' fees and costs.

214. California Class Representatives and California Class Members are entitled to payment and accompanying wage statements semimonthly.

215. Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements to California Class Representatives and California Class Members in accordance with California Labor Code section 226.

216. Defendants' failure to provide timely, accurate and itemized wage statements to California Class Representatives and California Class Members caused injury to California Class Representatives and California Class Members by, among other things, impeding them from knowing the amount of wages to which they were entitled.

217. As a result of Defendants' unlawful conduct, as alleged herein, California Class Representatives and California Class Members have been, and continue to be, injured and are entitled to the damages and penalties under California Labor Code section 226(e).

218. As a result of Defendants' conduct, California Class Representatives and California Class Members are also entitled to attorneys' fees under Labor Code sections 226(e), in addition to interest, expenses and costs of suit.

**Count 8: Unfair Business Practices Under California Law**

(The California Class Representatives and the California Class Against All Defendants)

(Violation of California Business and Professions Code §§ 17200, et seq.)

219.     The California Class Representatives re-allege and incorporate by reference all allegations in all preceding paragraphs.

220.     The California Class Representatives bring this cause of action on behalf of themselves and others similarly situated, seeking restitution of all unpaid wages as described above, including interest, for the four-year period preceding the filing of the *Senne* action until the resolution of this action.

221.     California Business and Professions Code section 17200, *et seq.* prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

222.     California Business and Professions Code section 17202 provides: "Notwithstanding Section 3369 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition."

223.     California Business and Professions Code section 17203 provides, in relevant part, that the Court may "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

224.     California Business and Professions Code section 17203 also provides that any person who meets the standing requirements of Section 17204 and complies with California Code of Civil Procedure section 382 may pursue representative claims for relief on behalf of others.

225.     California Business and Professions Code section 17204 allows any "person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the Unfair Business Practices Act.

226.     Labor Code section 90.5(a) states, in relevant part, that it is the public policy of California to "vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards."

227.    Pursuant to section 17204, California Class Representatives and California Class Members are entitled to enforce all applicable provisions of the Labor Code.

228.    Beginning at least since the date four years prior to the filing of *Senne et al. v. Office of the Commissioner of Baseball et al.*, Case No. 3:14-cv-00608-JCS, in the United States District Court, Northern District of California ("*Senne* suit"), Defendants have committed acts of unfair competition as defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent practices and acts described in this Complaint, including, but not limited to, violations of Labor Code sections 201, 202, 204, 221, 226, 226.7, 232, 232.5, 432.5, 510, 1182.12, 1197, 1198 and 2802.

229.    The violations of these laws and regulations, as well as of fundamental California public policies protecting workers, serve as unlawful predicate acts and practices for purposes of Business and Professions Code section 17200, *et seq.*

230.    The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code section 17200, *et seq.* Among other things, Defendants' acts and practices have forced California Class Representatives and California Class Members to labor without receiving appropriate compensation.

231.    The acts and practices described above have allowed Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

232.    As a result of the acts and practices described herein, California Class Representatives and California Class Members have been denied compensation, in an amount to be proven at trial.

233.    California Class Representatives and California Class Members are entitled to

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

restitution pursuant to Business and Professions Code sections 17203 and 17208 for all wages and other compensation unlawfully withheld from them during the four-year period prior to the filing of the *Senne* Suit.

234.     As a result of the aforementioned acts and practices, Defendants have received, and continue to receive, ill-gotten gains belonging to California Class Representatives and California Class Members.

235.     Injunctive relief is also necessary and appropriate to prevent Defendants from repeating its unlawful, unfair and fraudulent business acts and practices described herein.

236.     Pursuant to Section 17203 and/or any other applicable law, California Class Representatives seek an order preventing Defendants from engaging in unlawful, unfair and fraudulent conduct, and preventing Defendants from profiting and benefiting from illegal and wrongful acts.

237.     California Class Representatives success in this action will enforce important rights affecting the public interest. Therefore, California Class Representatives sue on behalf of themselves and California Class Members.

238.     An award of attorneys' fees is appropriate pursuant to California Code of Civil Procedure section 1021.5, because 1) this action will confer a significant benefit upon a large class of persons; 2) there is a financial burden involved in pursuing this action; and 3) it would be against the interest of justice to force California Class Representatives to pay attorneys' fees from any amount recovered in this action.

**Count 9: Unlawful Deduction from Wages**

(Violation of Labor Code § 221)

239.     California Class Representatives and the California Class Members reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

240.     California Labor Code section 221 provides that it shall be unlawful for any

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

employer to collect or receive from an employee any part of wages theretofore earned by said employer to said employee.

241.     Defendants have a policy and practice of subjecting employees to fines for various infractions, which are then deducted from any wages due to the employee.

242.     As a result of Defendants' unlawful conduct as alleged herein, California Class Representatives and California Class Members have sustained economic damages, including, but not limited to, unpaid wages and lost interest in an amount to be determined at trial.

243.     As a result of Defendants' conduct, California Class Representatives and the California Class Members are also entitled to attorneys' fees under Labor Code sections 218.5 and 1194, in addition to interest, expenses and costs of suit.

**Count 10: Imposition of Unlawful Terms and Conditions of Employment**

(Violation of California Labor Code § 432.5)

244.     California Class Representatives and the California Class Members reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

245.     California Labor Code section 432.5 provides that no employer shall require any employee to agree, in writing, to any term or condition which is known by the employer to be prohibited by law.

246.     Defendants require, as a condition of employment, that Plaintiff and Class Members sign an employment contract which includes numerous terms that are prohibited by law, including, but not limited to, the following:

        a.     employees agree to work for less than minimum wage or without appropriate overtime compensation;

        b.     employees will be fined for various infractions and that such fines will be deducted from their wages;

247.     Provisions of the UPC employment contract, as described above, that California

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

Class Representatives and California Class Members were required to sign as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy. Upon information and belief, Defendants knew that such provisions violated California law and public policy.

248.     As a result of Defendants' unlawful conduct as alleged herein, California Class Representatives and California Class Members have sustained damages.

### Count 11: Florida Minimum Wage Law Violations

(The Florida Class Representatives and the Florida Class Against All Defendants)

249.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

250.     Pursuant to Article X, Section 24 of the Florida Constitution, and pursuant to state statute, Fla. Stat. § 448.01 *et seq.*, the Defendants are and were required to pay the Florida Class Representatives and the Florida Class a minimum wage set by Florida state law. The state's minimum wage requirements apply to the Defendants and protect the Florida Class Representatives and the Florida Class.

251.     The Defendants constructed, implemented, and engaged in a policy and/or practice of failing to pay the Florida Class Representatives and all of the Florida Class the applicable minimum wage for all hours they suffered or permitted the minor leaguers to work in the state, and they continue to engage in such policies and practices.

252.     Before instituting this claim, all Defendants were served by the *Senne* suit Plaintiffs with the statutory notice required by Section 448.110, which alerted Defendants of the intent to bring a class action wage suit on behalf of minor leaguers. Defendants refused to pay the unpaid wages or otherwise satisfactorily settle the claim within fifteen days of receiving the notice.

253.     As a result of these minimum wage violations, the Florida Class Representatives and the Florida Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages,

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

prejudgment interest, attorneys' fees, costs, and other compensation pursuant to Article X, Section 24 of the Florida Constitution and Section 448.110 of the Florida Statutes.

254. Through the Defendants' pattern of unlawful conduct, the Defendants acted and continue to act willfully and intentionally, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with Florida's minimum wage requirements with respect to the compensation of the Florida Class Representatives and the Florida Class, and instead knowingly and/or recklessly disregarded state law.

255. Article X, Section 24 of the Florida Constitution, and Section 448.110 of the Florida Statutes, entitles members of the Florida Class to bring this action as a class action.

**Count 12: Arizona Minimum Wage and Wage Law Violations**

(The Arizona Class Representatives and the Arizona Class Against All Defendants)

256. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

257. Pursuant to Arizona law, the Defendants are and were required to pay the Arizona Class Representatives and the Arizona Class a minimum wage set by Arizona state law. Ariz. Rev. Stat. §§ 23-363, 23-364. The state's minimum wage requirements apply to the Defendants and protect the Arizona Class Representatives and the Arizona Class members.

258. The Defendants constructed, implemented, and engaged in a policy and/or practice of failing to pay the Arizona Class Representatives and all of the Arizona Class the applicable minimum wage for all hours they suffered or permitted the minor leaguers to work in the state, and they continue to engage in such practices.

259. As a result of these minimum wage violations, the Arizona Class Representatives and the Arizona Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to Section 23-364.

260. The Defendants' pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with Arizona's minimum wage requirements with respect to the compensation of the Arizona Class Representatives and the Arizona Class, and instead knowingly and/or recklessly disregarded state law.

261.     Under Arizona's Wage Law, §§ 23-351 et seq., Defendants have also willfully failed to pay wages to the Arizona Class Representatives and the Arizona Proposed Class for work performed. Thus, the Arizona Class Representatives and the Arizona Proposed Class are also entitled to treble the amount of wages unpaid. § 23-355(A).

### Count 13: Arizona Recordkeeping Requirements

(The Arizona Class Representatives and the Arizona Class Against All Defendants)

262.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

263.     The Defendants failed (and continue to fail) to make, keep, and preserve accurate records with respect to the Arizona Class Representatives and the Arizona Class, including hours worked each workday and total hours worked each workweek, as required by the Arizona Minimum Wage Law, Ariz. Rev. Stat. § 23-364, and supporting state regulations.

264.     The failure to maintain such records "shall raise a rebuttable presumption that the employer did not pay the required minimum wage rate." § 23-364.

### Count 14: Pennsylvania Minimum Wage Violations

(The Pennsylvania Class Representative and

the Pennsylvania Class Against All Defendants)

265.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

266.     Pursuant to Pennsylvania law, the Defendants are and were required to pay the Pennsylvania Class Representative and the Pennsylvania Class a minimum wage of at least $7.25 per hour. 43 Penn. Stat. § 333.104. The state's minimum wage requirements apply to the Defendants and protect the Pennsylvania Class Representative and the Pennsylvania Class

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

members.

267.    The Defendants were also required to pay all wages accrued on the regular payday, and were not allowed to withhold wages in contravention of the applicable laws.

268.    The Defendants constructed, implemented, and engaged in a policy and/or practice of failing to pay the Pennsylvania Class Representative and all of the Pennsylvania Class the applicable minimum wage for all hours they suffered or permitted the minor leaguers to work in the state, and they continue to engage in such practices. The Defendants also failed to pay all wages accrued on the regular payday and wrongfully withheld some wages.

269.    As a result of these minimum wage violations, the Pennsylvania Class Representative and the Pennsylvania Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to section 43 Penn. Stat. § 260.3(a).

270.    The Defendants' pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with Pennsylvania's minimum wage requirements with respect to the compensation of the Pennsylvania Class Representative and the Pennsylvania Class, and instead knowingly and/or recklessly disregarded state law.

### Count 15: Pennsylvania Overtime Violations

(The Pennsylvania Class Representative and

the Pennsylvania Class Against All Defendants)

271.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

272.    The laws of Pennsylvania require the Defendants to pay overtime compensation. 43 Penn. Stat. § 333.104(c). The state's overtime requirements apply to the Defendants and protect the Pennsylvania Class Representative and the Pennsylvania Class members.

273.    The Defendants were also required to pay all wages accrued on the regular

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

payday, and were not allowed to withhold wages in contravention of the applicable laws. §§ 43 Penn. Stat. § 260.3(a).

274.    Throughout the Pennsylvania three (3) year Class Period, the Pennsylvania Class Representative and the Pennsylvania Class routinely worked (and continue to work) far more than 40 hours in a workweek. The Defendants failed and continue to fail to pay the Pennsylvania Class Representative and the Pennsylvania Class overtime wages as required. The Defendants also failed to pay all wages accrued on the regular payday and wrongfully withheld some wages.

275.    As a result of these violations, the Pennsylvania Class Representative and the Pennsylvania Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to section 43 Penn. Stat. § 260.9a(f).

276.    The Defendants pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with Pennsylvania's overtime requirements with respect to the compensation of the Pennsylvania Class Representative and the Pennsylvania Class, and instead knowingly and/or recklessly disregarded state law.

### Count 16: Maryland Minimum Wage Violations

(The Maryland Class Representative and

the Maryland Class Against All Defendants)

277.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

278.    Pursuant to Maryland law, the Defendants are and were required to pay the Maryland Class Representative and the Maryland Class a minimum wage of at least $7.25 per hour. Maryland Code § 3-413. The state's minimum wage requirements apply to the Defendants and protect the Maryland Class Representative and the Maryland Class members.

279.     The Defendants were also required to pay all wages accrued on the regular payday, and were not allowed to withhold wages in contravention of the applicable laws.

280.     The Defendants constructed, implemented, and engaged in a policy and/or practice of failing to pay the Maryland Class Representative and all of the Maryland Class the applicable minimum wage for all hours they suffered or permitted the minor leaguers to work in the state, and they continue to engage in such practices. The Defendants also failed to pay all wages accrued on the regular payday and wrongfully withheld some wages.

281.     As a result of these minimum wage violations, the Maryland Class Representative and the Maryland Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation.

282.     The Defendants' pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with Maryland's minimum wage requirements with respect to the compensation of the Maryland Class Representative and the Maryland Class, and instead knowingly and/or recklessly disregarded state law.

**Count 17: Maryland Overtime Violations**

(The Maryland Class Representative and

the Maryland Class Against All Defendants)

283.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

284.     The laws of Maryland require the Defendants to pay overtime compensation. Maryland Code § 3-415. The state's overtime requirements apply to the Defendants and protect the Maryland Class Representative and the Maryland Class members.

285.     The Defendants were also required to pay all wages accrued on the regular payday, and were not allowed to withhold wages in contravention of the applicable laws.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

286.    Throughout the Maryland three (3) year Class Period, Maryland Code § 5-101, the Maryland Class Representative and the Maryland Class routinely worked (and continue to work) far more than 40 hours in a workweek. The Defendants failed and continue to fail to pay the Maryland Class Representative and the Maryland Class overtime wages as required. § Maryland Code § 3-415. The Defendants also failed to pay all wages accrued on the regular payday and wrongfully withheld some wages.

287.    As a result of these violations, the Maryland Class Representative and the Maryland Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation.

288.    The Defendants pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with Maryland's overtime requirements with respect to the compensation of the Maryland Class Representative and the Maryland Class, and instead knowingly and/or recklessly disregarded state law.

## Count 18: Oregon Minimum Wage Violations

(The Oregon Class Representative and

the Oregon Class Against All Defendants)

289.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

290.    Pursuant to Oregon law, the Defendants are and were required to pay the Oregon Class Representative and the Oregon Class a minimum wage of at least $8.95 per hour. O.R.S. § 653.025. The state's minimum wage requirements apply to the Defendants and protect the Oregon Class Representative and the Oregon Class members.

291.    The Defendants were also required to pay all wages accrued on the regular payday, and were not allowed to withhold wages in contravention of the applicable laws.

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

292.     The Defendants constructed, implemented, and engaged in a policy and/or practice of failing to pay the Oregon Class Representative and all of the Oregon Class the applicable minimum wage for all hours they suffered or permitted the minor leaguers to work in the state, and they continue to engage in such practices. The Defendants also failed to pay all wages accrued on the regular payday and wrongfully withheld some wages.

293.     As a result of these minimum wage violations, the Oregon Class Representative and the Oregon Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation.

294.     The Defendants' pattern of unlawful conduct was and continues to be willful and intentional, or at least with reckless disregard. The Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. The Defendants have not made a good-faith effort to comply with Oregon's minimum wage requirements with respect to the compensation of the Oregon Class Representative and the Oregon Class, and instead knowingly and/or recklessly disregarded state law.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own and on behalf of all other similarly situated persons, seek the following relief:

1.     That at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to members of the Minor League Collective, as defined above. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied (and/or continue to be denied) proper wages;

2.     Unpaid minimum wages and overtime wages, that have accrued and continue to accrue until the resolution of this action, and an additional and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations;

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

3.      Unpaid wages and pay pursuant to Arizona, Florida, California, Pennsylvania, Maryland and Oregon state law, that have accrued and continue to accrue until the resolution of this action, and liquidated damages pursuant to state law and supporting regulations;

4.      Statutory damages for Defendants' recordkeeping violations pursuant to federal and state law;

5.      Certification of the Proposed Classes, as set forth above, pursuant to Rule 23 of the Federal Rules of Civil Procedure;

6.      A determination that Defendants violated and continue to violate California Labor Code § 204 payday requirements, and an award of appropriate damages for the violations that have accrued and continue to accrue until the resolution of this action;

7.      A determination that Defendants violated and continue to violate California Labor Code §§ 201, 202, and 203 for withholding compensation at the time of termination of the California Class Representatives and the California Waiting Time Subclass, and an award of appropriate damages for the violations that have accrued and continue to accrue until the resolution of this action;

8.      A determination that Defendants violated and continue to violate the itemized wage statement requirements of California Labor Code § 226 as to the California Class Representatives and the California Class, and an award of appropriate damages for the violations that have accrued and continue to accrue until the resolution of this action;

9.      Designation of the named Plaintiffs herein as class representatives of the Classes, designation of their undersigned counsel of record as Class Counsel, and a reasonable incentive payment to Plaintiffs;

10.     Pre-judgment and post-judgment interest as permitted by law;

11.     An injunction requiring Defendants to pay all statutorily required wages pursuant to state and federal law and an order enjoining Defendants from continuing

or reinstating their unlawful policies and practices as described within this Complaint;

12.      Reasonable attorneys' fees and costs of the action; and

13.      Such other relief as this Court shall deem just and proper.


DATED: July 21, 2014               LAW OFFICES OF SAMUEL KORNHAUSER

                          and

               LAW OFFICES OF BRIAN DAVID


               By:     /s/ Samuel Kornhauser
                   Samuel Kornhauser
                   Attorney for Plaintiffs and
                   those similarly situated

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

# X.    DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.


DATED: July 21, 2014                    LAW OFFICES OF SAMUEL KORNHAUSER

and

LAW OFFICES OF BRIAN DAVID


By:  ___/s/ Samuel Kornhauser_____
        Samuel Kornhauser
        Attorney for Plaintiffs and
        those similarly situated

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111